In the
United States Court of Appeals
For the Seventh Circuit

Nos. 98-2950 & 98-3260

LARRY SPAIN,

Plaintiff-Appellant,

and

ERIC E. VICKERS,

Appellant,

v.

BOARD OF EDUCATION OF MERIDIAN COMMUNITY
UNIT SCHOOL DISTRICT NUMBER 101,

Defendant-Appellee.


Appeals from the United States District Court
for the Southern District of Illinois.
No. 95 C 4265--G. Patrick Murphy, Judge.


Argued December 8, 1999--Decided June 6, 2000



   Before HARLINGTON WOOD, JR., COFFEY, and FLAUM,
Circuit Judges.

   HARLINGTON WOOD, JR., Circuit Judge.  This case is
an appeal from an order of the United States
District Court for the Southern District of
Illinois dismissing with prejudice the civil
rights case of plaintiff Larry Spain and an order
of sanctions against Mr. Spain's counsel, Eric
Vickers. Mr. Spain filed this suit under Title
VII of the Civil Rights Act of 1964, 42 U.S.C.
sec. 2000e et seq., and 42 U.S.C. sec. 1981 in
November, 1995, claiming he was wrongfully
terminated as school principal because of his
race by his employer, defendant-appellee Board of
Education of Meridian Community Unit School
District Number 101 ("the Board").

I.  BACKGROUND

   Mr. Spain's case was originally assigned to
Judge J. Phil Gilbert. During discovery, the
Board filed a Motion to Compel Answers to
Interrogatories and Responses to a Request for

Production based on plaintiff's failure to file his initial disclosures and to cooperate in discovery. The court granted this motion, and on December 5, 1996, as a sanction ordered plaintiff to pay $285 in attorney's fees and costs to defense counsel by January 8, 1997. The sanction was not paid until July 27, 1998. In April, 1998, the case was reassigned to newly-appointed Judge G. Patrick Murphy and was set for trial for June 23, 1998. On May 28, 1998, the district court held a pre-trial conference. During the pre-trial conference at which Mr. Vickers was present, the court ordered the jury instruction conference set for June 3, 1998 at 9:00 a.m. At this time the parties were to provide the court with their proposed jury instructions.

Mr. Vickers was absent for the 9:00 a.m. start of the jury instruction conference. Noting that the case was set for trial on June 23, 1998, the court proceeded with the conference despite Mr. Vickers's absence. Defense counsel informed the judge that he had not received a list of exhibits or any proposed jury instructions from plaintiff's counsel. The district judge noted that Mr. Vickers had been unprepared at the May 28 pre-trial conference and stated that he was considering asking defense counsel to draft a set of jury instructions. The court then took a short recess.

Following the recess, the court asked defense counsel whether the previously ordered sanction for failure to cooperate in discovery had been paid. Defense counsel informed the court that it had not. The court again noted that at the May 28 pre-trial conference "plaintiff's lawyer was completely unprepared and offered no particular excuse for being unprepared." The court recognized its power to sanction counsel under Rules 16 and 37 of the Federal Rules of Civil Procedure for refusal to cooperate. The court stated "[o]rdinarily, the Court would simply assess some attorney's fees and costs and try to get the case back on schedule. But, that's been tried in this case before and that didn't work." The court, citing Mr. Vickers's failure to pay the previously ordered $285 sanction, his lack of preparation for the pre-trial conference, and his failure to appear at the jury instruction conference, dismissed the case with prejudice. That same day, the court issued a written order entering default judgment against Mr. Spain for failure to prosecute.

Mr. Vickers, mistaken as to the time of the hearing, arrived in court at approximately 9:30 a.m. on June 3. By this time, the hearing had concluded. In chambers, Mr. Vickers told the court he never received a written order setting

the time of the jury instruction conference./1
After being informed that his client's case had
been dismissed with prejudice, Mr. Vickers filed
a motion asking the court to reconsider the
dismissal which the court construed as a motion
to alter or amend the judgment pursuant to
Federal Rule of Civil Procedure 59.

On July 23, 1998, a hearing was held on the
motion to reconsider. The court ordered counsel
to have their clients present at the hearing. At
the beginning of the hearing, the following
exchange took place between the court and Mr.
Spain:

THE COURT:  . . . Mr. Spain, have you been told
that your case was dismissed?

MR. SPAIN:  No, I have not.

THE COURT:  You have not?

MR. SPAIN:  No.

THE COURT:  Have you been told why I ordered you
here today?

MR. SPAIN:  I received a letter indicating that
it was for reconsideration.

THE COURT:  And this is the first time you even
knew your case had been dismissed?

MR. SPAIN:  Yes.

At the hearing, the court heard from Mr. Spain,
Mr. Vickers, and defense counsel. Following a
recess, the court, citing Mr. Spain's sympathetic
situation due to his counsel's actions and the
severity of dismissal as a sanction, granted the
motion to reconsider on three conditions. The
court outlined these conditions at the hearing
and also in a written order dated July 24, 1998.
First, Mr. Vickers was ordered to comply with all
previous orders in the case including paying the
$285 sanction. Secondly, Mr. Vickers must refer
his failure to keep his client apprised as to the
progress of his case and to inform his client of
the dismissal of his case to both the Illinois
Attorney Registration and Disciplinary Commission
and the corresponding disciplinary authority in
Missouri. Finally, Mr. Vickers was ordered to pay
defense counsel $2,000 in attorney's fees to
"defer the additional expenses and annoyance
occasioned by [Mr. Vickers's] conduct in this
case." If Mr. Vickers were to comply with these
conditions within five working days, the case
would be reinstated. At the hearing Mr. Vickers
expressed some reluctance to comply with the
conditions set out by the court. At that point,

the court clearly informed Mr. Spain that Mr. Vickers had "not shown any inclination to comply with the previous orders" of the court and that if Mr. Vickers failed to comply with these conditions "the case will be dismissed, or the dismissal will remain effective." However, anticipating Mr. Vickers's compliance, the court stated that the case would be tried on August 25, 1998 at 8:00 a.m. In the July 24 written order, the court addressed Mr. Vickers's expressed reluctance to comply with the conditions as follows:

Mr. Vickers expressed some reluctance to comply with this Order. If he does not, this Court will obtain compliance through its contempt power in order that the authority and dignity of this Court be maintained. Whether Mr. Spain receives his day in court is completely contingent upon Mr. Vickers' prompt and strict compliance with this Order. However, regardless of whether his compliance is strict and prompt, it will be forthcoming.

The day after the hearing, Mr. Vickers wrote Mr. Spain a letter, with carbon copies to the judge and defense counsel, saying he would not submit to the conditions imposed by the district court. The court received its copy of the letter on July 27, 1998, and the next day entered an order denying the motion to reconsider the dismissal. The court also issued an order for Mr. Vickers to show cause why he should not be held in contempt of court based on his failure to comply with the conditions imposed by the district court and on what the court viewed as several misrepresentations in his letter to Mr. Spain. Mr. Vickers filed a Motion for Change of Judge, citing the court's bias in placing the blame on the plaintiff, issuing an order that was a personal attack, and seeking to deny both plaintiff and counsel the right to appeal and right of trial. This motion was denied, and following the show cause hearing, the district court found Mr. Vickers in civil contempt of court, upheld the earlier conditions, and imposed a fine of $50 a day against Mr. Vickers to run until he fully complied with the conditions.

On July 30, 1998 a notice of appeal was filed in the case, and on September 3, 1998 an amended notice of appeal was filed, challenging (1) the original default judgment against Mr. Spain, (2) the order granting the motion to amend judgment provided Mr. Vickers complies with the three conditions, (3) the order denying reconsideration due to Mr. Vickers's non-compliance, and (4) the denial of the motion to stay execution of judgment.

II.  ANALYSIS

  A.  Appellate Jurisdiction

  Appellee has filed a motion to strike Mr.
Spain's portion of the appeal, arguing Mr. Spain
is not a party to this appeal since only Mr.
Vickers and not Mr. Spain filed a proper notice
of appeal. We must first decide this
jurisdictional question before proceeding to the
merits of Mr. Spain's appeal. The body of the
amended notice of appeal consisted of the
following sentence:

Notice is hereby given that Eric E. Vickers,
counsel for Larry Spain, plaintiff above-named,
hereby appeals to the United States Court of
Appeals for the Seventh Circuit for the orders
entered in this action on June 3rd, July 24th,
July 28th, 1998 and August 20, 1998.

The caption of the appeal stated "Larry M. Spain,
Plaintiff v. Board of Education of Meridian
Community Unit School District Number 101,
Defendant."

  Federal Rule of Appellate Procedure 3(c)(1)(A)
requires a party to name each party appealing in
the "caption or body of the notice" of appeal.
Rule 3(c)(4) provides that an appeal will not be
dismissed for "failure to name a party whose
intent to appeal is otherwise clear from the
notice." The 1993 advisory committee notes to
Rule 3 consider the designation sufficient if "it
is objectively clear that a party intended to
appeal." Appellee cites to Clay v. Fort Wayne
Community Schools, 76 F.3d 873 (7th Cir. 1996),
to support his Rule 3(c)(1)(A) argument.

  Clay was a class action suit in which both
parents and their children sued a school
district. The case was dismissed, and on appeal,
this court ruled that the children did not have
grounds for appeal since only the parents were
named in the notice of appeal. Id. at 877. We
reasoned that in not mentioning the children in
the notice, "the adult plaintiffs were appealing
all adverse judgments entered against them not
judgments entered against their children or
student plaintiffs." Id. We also emphasized the
importance of clarity in the notice of appeal in
class action cases otherwise "class-action
defendants in actions brought by multiple
plaintiffs, would never know which classes were
appealing the court's decision." Id.

  Clay can be distinguished from the facts in the
present case. Clay was a class action case, and
absent specific notice of appeal, it was unclear
which plaintiffs were appealing. Here, there is

only one party in this case. Two of the orders specifically listed in the notice of appeal are the order to dismiss Mr. Spain's case and the order denying Mr. Spain's motion to reconsider his dismissal. These two orders dealt only with Mr. Spain's case and not with Mr. Vickers's sanctions. Therefore, under Federal Rule of Appellate Procedure 3(c)(4), even though Mr. Spain was not named in the body of the notice of appeal, his "intent to appeal is otherwise clear from the notice." The notice of appeal made it objectively clear that Mr. Spain intended to appeal. Also Mr. Spain's name was included in the caption of the appeal, as required by Rule 3(c)(1)(A). Mr. Spain is a proper party to this appeal, and we may consider his claims on the merits. Appellee's motion to strike is denied.

B.  Dismissal and Motion to Reconsider

Federal Rule of Civil Procedure 16(f), which incorporates Rule 37(b)(2)(C), allows a district court to dismiss an action for failure of a party to attend a pre-trial conference. The court has this power in order to "achieve the orderly and expeditious disposition of cases." Link v. Wabash Railroad Co., 370 U.S. 626, 630-31 (1962). However, the court shall not dismiss a case "without due warning to the plaintiff's counsel." Ball v. City of Chicago, 2 F.3d 752, 755 (7th Cir. 1993). Due warning does not require the judge to "notify the plaintiff himself, as distinct from his lawyer, before dismissing." Id. at 756. Dismissal should be used "only in extreme situations, when there is a clear record of delay or contumacious conduct, or when other less drastic sanctions have proven unavailable." Kruger v. Apfel, No. 98-4193, 2000 WL 562804, at *3 (7th Cir. May 10, 2000) (internal quotations and citations omitted). Spain argues that the district court erred both in dismissing his case and in denying his motion to reconsider. We apply the abuse of discretion standard when reviewing an order to dismiss. National Hockey League v. Metropolitan Hockey Club Inc., 427 U.S. 639, 642 (1976). We also apply abuse of discretion when reviewing the denial of a Rule 59 motion to amend the judgment. Britton v. Swift Transportation Co., Inc., 127 F.3d 616, 618 (7th Cir. 1997).

In the present case, Mr. Vickers, by not attending the jury instruction conference, violated Rule 16(f). In his brief, Mr. Vickers claims that his failure to attend was the district court's fault, since the written notice for the conference arrived late. While the order did indeed arrive late, Mr. Vickers was present at the previous conference where the court announced on the record the time of the jury

instruction conference as 9:00 a.m. The fact Mr. Vickers did show up for the conference on that day, shows that he knew of the hearing and was not relying solely on written notice. Since the district court later granted the motion to reconsider upon three conditions, the court did not "accord favorable treatment to appellee" as Mr. Vickers contends.

Mr. Vickers received "due warning" that the case would be dismissed at the reconsideration hearing. The district court, citing the difficult position of Mr. Spain, who was not at fault, allowed the case to be reinstated provided Mr. Vickers comply with the three conditions within five working days. While the case was still technically dismissed, the court stated that it would reinstate the case provided Mr. Vickers promptly complied with the conditions. Therefore, Mr. Vickers had due warning before the case was finally dismissed. Not only did Mr. Vickers receive this warning, but so did Mr. Spain, who was present for the reconsideration hearing. At the hearing, Mr. Vickers, in the presence of his client, indicated his reluctance to comply with the three conditions. The district court received Mr. Vickers's letter to Mr. Spain on July 27, 1998, three days after the hearing on the motion to reconsider. In the letter Mr. Vickers told his client that he would not comply with the three conditions. The court, reasonably taking this letter as Mr. Vickers's failure to comply, ordered Mr. Vickers to show cause why he should not be held in contempt and refused to reinstate the case.

In ordering both the original dismissal and in conditionally granting the motion to reconsider, the court cited several instances of delay committed by Mr. Vickers throughout the case. These included failure of Vickers & Associates to provide initial disclosures, failure to answer interrogatories, failure to pay the previously ordered $285 sanction for failing to make initial disclosures, and lack of preparation at the May 28 pre-trial conference. Finally, there was the failure of Mr. Vickers to attend the June 3 jury instruction conference. These facts support a finding of a "clear record of delay." Kruger, 2000 WL 562804, at *3. Also the fact that Mr. Vickers did not pay the previous sanction for a year and a half gave the court grounds to believe further monetary sanctions would be ineffective, particularly when Mr. Vickers informed his client and the court that he would not comply with the conditions. While going from a sanction of $285 to dismissal may seem an abrupt increase in severity, Mr. Spain does not claim he was lulled into a false sense of security. Furthermore, at the reconsideration hearing, the court

"reiterated crystalline warnings of the imminent dismissal of this case." Ball, 2 F.3d at 757. This was enough for Mr. Spain to be aware dismissal was a real possibility.

The district court provided the required warning to both the plaintiff and his counsel. It was after this warning that Mr. Vickers informed the court he would not comply with the conditions for reinstatement. This warning, combined with the earlier delays and the ineffectiveness of previous sanctions, are sufficient to support a finding that the district court did not abuse its discretion in dismissing the case or in denying the motion to amend judgment.

C.  Sanctions Against Mr. Vickers

Mr. Vickers also appeals, arguing that the sanctions imposed against him were "illegal." When reviewing Rule 16(f) sanctions, whether it is dismissal or sanctions against an attorney, we apply the abuse of discretion standard. National Hockey League, 427 U.S. at 642; Smith v. Chicago School Reform Bd. of Trustees, 165 F.3d 1142, 1144 (7th Cir. 1999). In the order on the motion to reconsider, the district court ordered Mr. Vickers to pay the previously ordered $285 sanction for failure to make initial disclosures. The court further ordered Mr. Vickers to refer himself to the Missouri and Illinois attorney disciplinary agencies for failing to inform Mr. Spain of the dismissal of the case. Finally, the court required Mr. Vickers to pay $2,000 in attorney's fees to defense counsel to "defer the additional expenses and annoyance occasioned by [Mr. Vickers's] conduct in this case." Prior to the show cause hearing, but after writing the letter, Mr. Vickers paid the $285 and referred himself to the disciplinary authorities, which left the $2,000 in attorney's fees. Following the show cause hearing the court found Mr. Vickers in civil contempt to "compel compliance" with the remaining sanction of $2,000.

Mr. Vickers initially argues that the sanctions were illegal because they resulted from his letter to his client which he contends was Constitutionally-protected speech and, therefore, "non-contemptuous." However, Mr. Vickers fails to recognize that the sanctions were imposed not because of his letter to his client, but based on several failures and delays in the prosecution of the case by Mr. Vickers. In its July 24 order imposing the sanctions, the court expressly stated that the sanctions were based on "a pattern of neglect and slovenly practice" by Mr. Vickers. The July 24 order made clear that, should Mr. Vickers fail to comply with the

sanctions, the court would "obtain compliance through its contempt power in order that the authority and dignity of [the court] be maintained." At the show cause hearing, the court noted "[t]he purpose of civil contempt is essentially to compel compliance" and found Mr. Vickers in contempt of court, not based on the contents of his letter, but for his failure to pay the $2,000 in attorney's fees that had been ordered. Given the history of delay in the record, the district court did not err in holding Mr. Vickers in contempt for failing to comply with valid, court-ordered sanctions. Furthermore, Mr. Vickers argues that the court unjustifiably ordered the show cause hearing before the five days allotted for compliance with the order had expired. However, after receiving a carbon copy of the letter from Mr. Vickers to Mr. Spain stating that he would not comply with the conditions ordered by the district court, the district judge was reasonable by concluding that Mr. Vickers would not comply within the allotted five days. In fact, at the time of the show cause hearing on August 6, 1998, Mr. Vickers had not yet fully complied with the conditions.

III.  CONCLUSION

  Appellee's motion to strike is DENIED. The decision of the district court is AFFIRMED.


/1 The record reveals that in fact, the court's written order setting the hearing for 9:00 a.m. on June 3 did not arrive at Mr. Vickers's office until the 10:00 a.m. mail delivery on June 3.